AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| **FILED** | |
| Mar 27 2026 | |
| Mark B. Busby | |
| CLERK, U.S. DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |
| SAN FRANCISCO | |

United States of America )
v. )
)
) Case No.   3:26-mj-70315 MAG
)
Marvin SARMIENTO and )
RACHEL LOUISE WASHINGTON, )
)

*Defendant(s)*

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___February 26, 2026___ in the county of ___San Francisco___ in the ___Northern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). | Conspiracy to distribute a controlled substance, to wit: a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide (fentanyl) |
| | PENALTIES: |
| | Up to 20 years imprisonment |
| | Fine: up to $1 million |
| | Supervised Release: 3 years to life |
| | $100 Special Assesment, possible forfeiture/immigration consequences |

This criminal complaint is based on these facts:

See attached affidavit of Task Force Officer Jeffrey T. Ospital

☑ Continued on the attached sheet.

Approved as to form _____
AUSA   Bhagat

/s/
*Complainant's signature*

Jeffrey T. Ospital, Task Force Officer, DEA
*Printed name and title*

Sworn to before me by telephone.

Date:   03/26/2026

City and state:   San Francisco, California

*Judge's signature*

Hon. Lisa J. Cisneros, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Jeffrey T. Ospital, a police officer with the San Francisco Police Department, serving as a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, hereby depose and state as follows

1.      I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Marvin SARMIENTO (SARMIENTO) and Rachel Louise WASHINGTON with conspiracy to distribute a controlled substance, to wit: a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide (fentanyl), in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C).

2.      The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3.      Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint.

4.      I am a Police Officer with the San Francisco Police Department ("SFPD") and have been a sworn peace officer in the State of California since June of 2016.  I have been assigned as an officer / investigator at the SFPD Narcotics Unit since March 2023, and prior to

1

that was a patrol officer assigned to Central Police Station. I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5.     In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations. I have attended training covering various aspects of narcotics investigation including but not limited to drug identification, informant management, undercover operations, search warrant preparation, drug manufacturing, drug overdose homicides, and narcotics and human trafficking investigations.

6.     During my employment at SFPD, I have participated in over a hundred controlled substance sale investigations. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career which have provided me further insight to the world of narcotics trafficking and use. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of

2

suspects and seizure of controlled substances.  I have reviewed numerous reports related to drug investigations and arrests.  I have also prepared search warrants to seize weapons and narcotics.

7.    Based on my training and experience, as well as conversations I have had with drug dealers, and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers.  Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8.    I have also had discussions with other law enforcement officers and in addition to training about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers.  I have examined documentation of various methods in which fentanyl and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.  I am familiar with the appearance of marijuana, heroin, cocaine, cocaine base, methamphetamine, fentanyl, and other controlled substances and regularly handle and inspect controlled substances in the course of my duties.

9.    I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued.  Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

**APPLICABLE STATUTES**

10. Under Title 21, United States Code, Section 841(a)(1), it is unlawful for any person to knowingly distribute or possess with intent to distribute a controlled substance. Under 21 C.F.R. § 1308.12, methamphetamine and fentanyl are Schedule II controlled substances.

11. Title 21, United States Code, Section 846 makes it unlawful for any person to, among other things, attempt or conspire to possess with intent to distribute or distribute a controlled substance.

**PROBABLE CAUSE**

12. On or about February 26, 2026, two law enforcement officers operating in an undercover capacity (UC-1 and UC-2) were in the area of Leavenworth Street and Ellis Street in San Francisco. UC-1 and UC-2 approached a person later identified as WASHINGTON. UC-1 asked WASHINGTON if she had any "ISO." WASHINGTON replied, "how much," and UC-1 said "thirty," and offered her $30 in marked United States currency (a $20 bill and a $10 bill).

13. I know from my training and experience that "iso" is a common street term for fentanyl. Based on my training and experience, in the above-described interaction, I believe that UC-1 asked WASHINGTON for $30 worth of fentanyl.

14. WASHINGTON took the $30 and told UC-1 and UC-2 to follow her to a vehicle where they understood she would provide the fentanyl. UC-1 and UC-2 followed WASHINGTON southbound on Leavenworth Street, and WASHINGTON walked into a convenience store. WASHINGTON then asked UC-1 if he could give her more money and said that in exchange she would provide UC-1 more fentanyl.

4

15.     UC-2 provided UC-1 an additional $30 in marked United States currency.  UC-1 then gave WASHINGTON a marked $10 bill.  UC-1 observed WASHINGTON purchase lottery scratchers with marked currency; as WASHINGTON exited the convenience store, she handed UC-1 a clear, tied-up plastic bag containing a chalky, off-white substance that UC-1 recognized to be fentanyl.  That substance was later determined to weigh 1.8 grams.  A TruNarc test of the substance was inconclusive.

16.     WASHINGTON then told UC-1 and UC-2 to follow her to her vehicle for additional fentanyl.

17.     UC-1, UC-2, and WASHINGTON then continued walking south on Leavenworth Street and turned east onto Turk Street.  At the northeast corner of Turk Street and Jones Street, a male later identified as SARMIENTO and a female later identified as M.V.Q. walked past.  As they were walking past, UC-1 heard SARMIENTO say, "ISO, ISO."

18.     After hearing SARMIENTO say "ISO, ISO," WASHINGTON indicated to UC-1 and UC-2 that SARMIENTO and M.V.Q. had "better product."  WASHINGTON got SARMIENTO and M.V.Q.'s attention and asked them if they had ISO; they responded in the affirmative.

19.     UC-1 handed WASHINGTON a marked $20 bill. WASHINGTON handed the $20 bill to M.V.Q. SARMIENTO then bent down behind a white Tesla sedan and pulled out a clear, opened plastic bag containing a chalky off-white substance that UC-1 recognized as consistent with fentanyl.

20.     M.V.Q. used her phone's flashlight to illuminate the bag.  SARMIENTO placed his hand into the plastic bag containing the off-white substance and used his fingers to break off a piece.  SARMINETO then handed UC-1 the substance.  That substance was later determined to

weigh 1.3 grams, and a preliminary analysis using a TruNarc device determined it was fentanyl, as depicted below:



21.    SARMIENTO, WASHINGTON, and M.V.Q. were subsequently arrested and searched incident to arrest.  Among other things, officers located the following:

      a.    SARMINETO was in possession of $30 in previously-marked funds that were previously in the possession of UC-1 and/or UC-2, approximately 3.6 grams of a substance that later tested positive for fentanyl, approximately 1.2 grams of a substance that later tested positive for cocaine base ("crack"), approximately 1.5 grams of a substance that later tested positive for cocaine hydrochloride, and approximately 5.2 grams of a substance that officers recognized to be marijuana.

6

b. WASHINGTON's bag contained several torch-style lighters and a rubber bong style pipe.

c. M.V.Q.'s purse contained a digital scale and a baggy containing approximately 1.2 grams of a substance that later tested positive for methamphetamine.

22.    For the foregoing reasons, there is probable cause to believe that SARMIENTO and WASHINGTON have violated Title 21, United States Code, Section 846, 841(a)(1) and (a)(1)(C), Conspiracy to Distribute a Controlled Substance (to wit: N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide (fentanyl)), and I respectfully request that a Criminal Complaint and Arrest Warrants issue.

*/s/ Jeffrey T. Ospital*

_____
Jeffrey T. Ospital
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 26th day of March, 2026.

_____
THE HONORABLE LISA J. CISNEROS
United States Magistrate Judge

7